UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>v.<br><br>OTAGUS DEMOND COVERSON,<br><br>                      Defendant. | CASE NO. 3:9-CR-00075-TMB-DMS<br><br>**INITIAL REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**<br>**[Doc. 130]** |

## I. MOTION PRESENTED

The defendant, Otagus Demond Coverson, has been charged with one count of attempted possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 8841(a)(1) and (b)(1)(A). In this motion filed at Docket 130, Coverson asks this Court to suppress all evidence regarding the monitored package and how it was opened at 4318 Vance Drive #4A on July 14, 2009. First, he challenges the authority of the postal inspector agents to apply for a warrant in this case, citing to 18 U.S.C. § 3061(a). Second, he argues that the beeper warrant SW 03-09-MJ-00 was not supported by probable cause and thus evidence derived from it should be suppressed. In his memorandum, he states that the subsequent warrants for Coverson's residence and vehicle should also be suppressed as fruits of the initial beeper warrant. Third, in his memorandum, he not only asserts that there isn't probable cause, he seeks to add evidence that the affidavit was misleading because it omitted certain facts, specifically he argues that the agent failed to provide relevant information regarding the informant's criminal history, which he says included a perjury conviction.

1

The Government opposes the motion. It argues that Coverson does not have the requisite privacy interest to challenge the monitoring of the package because he was not the sender or the addressee. It states that this case involved prior instances of mailing drug packages so it does fall within 18 U.S.C. § 3061(a). It states that the application presented adequate facts to support probable cause and that squabbling over what other facts could or should have been included is not warranted. It also objects to Coverson's contention that the search warrant was misleading.

## II. EVIDENTIARY HEARING

An evidentiary hearing was held on February 2, 2011. The transcript from that hearing is located at Docket 175 (hereafter referred to as Tr.). At the hearing, Coverson testified for the purpose of establishing standing in the package. The Court indicated that it would consider the standing issues but that it wanted to proceed on the remaining issues given the upcoming trial date in March. The parties were given an opportunity to present oral argument and further evidence as to the propriety of holding a <u>Franks</u> hearing. After due consideration, the Court ruled that Coverson had made a substantial preliminary showing that the affiant in this case made a reckless omission to the affidavit supporting the beeper warrant and that such omission was material to the finding of probable cause. Postal Inspector Andrea Avery, the affiant for search warrant SW 03-09-MJ-00, proceeded to testify. Drug Enforcement Agency (DEA) Agent Nathaniel Clementson also testified.

## III. STATEMENT OF FACTS

### A. Investigation

On July 9, 2009, authorities in Oregon seized about nine kilograms of cocaine from a vehicle. Based on investigation, law enforcement agents learned that the cocaine was supposed

2

Case 3:09-cr-00075-TMB   Document 208   Filed 03/22/11   Page 2 of 15

to be delivered to Paul Nagan, who lived in the state of Washington. After a controlled drug delivery, Paul Nagan was arrested. Nagan cooperated with law enforcement, and from Nagan law enforcement learned that the drugs were ultimately intended for a person named "Blaze." Nagan informed them that Blaze had paid him to receive the cocaine and that Nagan was supposed to mail the cocaine to 4318 Vance Drive, Apartment A4 in Anchorage, Alaska. Nagan admitted that he had previously mailed packages of cocaine to "Blaze" at the same address. Law enforcement determined that "Blaze" was Coverson, through a third party unrelated to Nagan.

Law enforcement then orchestrated a third controlled delivery in order to investigate Coverson's involvement. Law enforcement agents in Anchorage, Alaska created a sham Express Mail Package through the U.S. Postal Service. The package contained nine kilograms of imitation cocaine and a tracking device that allowed the agents to monitor the package. (Doc. 136-2 at 2). The tracking device was placed in the package pursuant to the beeper warrant at issue in this motion, SW 03-09-MJ-00. A beeper warrant authorizes agents to place a tracking device inside the package and monitor when it is opened. When the tracking device signals that the package has been opened, the warrant allows the agents to get the tracking device back from wherever the package has been opened. (Tr. at 58; Doc. 136-2). The agents also created a mailing label. (Tr. at 61). The addressee on the label was Jay Jenkins. It was addressed to the Vance Drive address. (Doc. 136-2 at 9). The return address contained the name of a business in Seattle. (Doc. 136-2 at 9). It was randomly selected by the Postal Inspector. (Tr. at 61). Nagan placed a couple calls to Blaze to confirm mailing instructions and to inform Coverson about the name used as the addressee on the package. (Defense Ex. C). The package was never placed in the mail system since it was actually created by law enforcement agents. Instead, a Postal

3

Inspector hand-delivered the package to Coverson on July 14, 2011. Coverson was in the residence and received the package. About ten minutes later the tracking device indicated the package had been opened. The agents entered the Vance Drive residence. Coverson attempted to flee but was detained. (Doc. 136-3 at 16; Tr. at 19). The package containing sham drugs is the basis for the attempt charge in this case.

**B. Beeper warrant**

As described above, the agents in this case obtained a beeper warrant to track the sham package, and pursuant to that warrant, they entered the Vance Drive home to retrieve the package from Coverson. The beeper warrant was granted on the basis of an affidavit from Postal Inspector Andrea Avery dated July 13, 2010 and located in the record at Docket 136-2. In that affidavit, Inspector Avery explained that the beeper warrant was going to be placed in an Express Mail package that had been prepared by law enforcement agents in Anchorage, Alaska and that it contained nine kilograms of imitation cocaine. Inspector Avery explained the seizure of nine kilograms of cocaine in Oregon from a vehicle. She explained how that seizure eventually resulted in the arrest of Nagan. She explained that Nagan cooperated with law enforcement and admitted that he was supposed to pick up the nine kilograms of cocaine but said that he was paid $5,000 to do so by a man named "Blaze." Inspector Avery's affidavit said that Nagan told law enforcement he was supposed to ship it to Alaska and that he had mailed drugs up to Alaska two other times. Nagan told law enforcement agents that both packages were sent to the same address but that he needed to call someone to verify the address. After making a phone call he told the agents that the nine kilograms of cocaine were supposed to be mailed to 4318 Vance Drive, #4A, Anchorage, AK 99508 and that the Vance Drive address was where he mailed the

prior two packages.

Inspector Avery's typed affidavit stated that "Blaze" was later identified as Coverson. In a handwritten notation in the margin next to that sentence, Inspector Avery wrote that Nagan identified a photograph of Coverson to be "Blaze." That notation was initialed and dated by Avery. The affidavit went on to say that agents observed Coverson at the 4318 Vance Drive address at Apartment #4A earlier that day (July 13, 2010).

Inspector Avery also indicated that she reviewed Express Mail labels in order to see if there were in fact prior packages mailed to the Vance Drive address from the Tacoma/Seattle, Washington area. She explained in the affidavit that she found two such labels. One was dated April 14, 2009, weighed about 33 pounds, and was mailed from Seattle. The other package was dated May 27, 2009, weighed about 22 pounds, and was mailed from Tacoma. The labels indicated that both packages were sent to "D. Josey." (Docket 136-2 at pp.8-9).

This Court granted the request and issued the order. The actual order is located in the record at Docket 136-1. It stated that probable cause existed to believe that Coverson, living at 4318 Vance Drive, Apartment A4, was engaging in drug crimes and that there was probable cause to believe that an electronic alerting device installed in the sham package would assist law enforcement in conducting surveillance of the package and in determining the moment the package is opened. It granted the Postal Inspectors and federal agents authority to install, monitor, utilize, and retrieve the device located within the package on either public or private property.

5

## IV. STANDING TO CHALLENGE BEEPER WARRANT

Before this Court makes specific findings of fact regarding the beeper warrant at issue in this case (SW 03-09-MJ-00) and the affidavit in support of that warrant, it must first consider the standing arguments presented by both parties.

Fourth Amendment rights cannot be asserted vicariously. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). In order to have a viable Fourth Amendment claim, the person asserting his or her rights must have a legitimate expectation of privacy. Id. at 143 (citing Katz v. United States, 389 U.S. 347, 353 (1967)). The defendant bears the burden of establishing his legitimate expectation of privacy. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); United States v. Zermeno, 66 F.3d 1058, 1061 (9th Cir. 1995). Simply being charged with a possessory crime, or simply alleging that one has a possessory interest in an item, is insufficient to demonstrate "standing." Zermeno, 66 F.3d at 1061. See also United States v. Singleton, 987 F.2d 1444 (9th Cir. 1993) (the prosecutor may assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of a search without being inconsistent). In other words, a defendant cannot simply rely on the government's allegations in the pleading to establish standing; the person must put forth evidence that he or she had a privacy interest in the place searched. Id. at 1062. To demonstrate a legitimate expectation of privacy, the person must show that he or she has a subjective expectation of privacy in the area searched that society is prepared to recognize as objectively reasonable. See Smith v. Maryland, 442 U.S. 735, 740 (1979); United States v. Ziegler, 474 F.3d 1184, 1189 (9th Cir. 2007); United States v. Taketa, 923 F.2d 665, 670-71 (9th Cir. 1991).

**A. Privacy interest in the package**

Both parties focused on Coverson's privacy interest in the sham package and cited to cases that discuss the privacy interest a person has in relation to a package that they did not send and is not addressed to them. Coverson cited to United States v. Pitts, 322 F.3d 449 (7th Cir. 2003). In Pitts, the majority held that the defendant did not have standing to challenge a search of the package at issue because they abandoned the package when they used fictitious names on the package and placed it in the mail system. The concurring opinion in the Pitts case thought that the defendant lacked standing not because the package was abandoned but because the names on the package were fictitious and were not legitimate "alter egos" that society recognizes as legitimate. The majority opinion specifically disagreed with the concurring judge's analysis and stated that the defendant had a right to use fictitious names in sending and receiving mail and therefore concluded that there can be an expectation of privacy for a person using an alias in sending or receiving mail that society recognizes as reasonable.

The Government cited to cases from other circuits, such as United States v. Givens, 733 F.2d 339 (4th Cir. 1984); United States v. Pierce, 959 F.2d 1297 (5th Cir. 1992); United States v. Smith, 39 F.3d 1143 (11th Cir. 1994); United States v. Lewis, 738 F.2d 916 (8th Cir. 1984), as well as Judge O'Scannlain's concurring opinion in United States v. Lozano, 623 F.3d 1055 (9th Cir. 2010). Those cases held that a person who is neither the sender nor the addressee listed on the package cannot establish a legitimate expectation of privacy.

Letters and sealed packages in the mail system are entitled to full protection under the Fourth Amendment. United States v. Jacobsen, 466 U.S. 109, 114 (1984). Both the sender and the addressee of a package have privacy interests in a mailed package. United States v.

7

Hernandez, 313 F.3d 1206, 1209 (9th Cir. 2002).  Other circuits have concluded that a third party who is neither the sender nor the addressee of a mailed packages does not have the requisite privacy interest to challenge any search.  See e.g., United States v. Pierce, 959 F.2d 1297, 1303 (5th Cir. 1992)). However, the Ninth Circuit has not definitively ruled on the issue.

The possible exception to this rule is that a defendant who was neither the sender nor the addressee of a package could possibly establish a privacy interest by demonstrating ownership or that he was the intended recipient.  See Sheldon, 351 F.Supp.2d 1040, 1043-44 (D. Hawaii 2004).  In this case, Coverson established he was the intended recipient and expected the package under the alias Jay Jenkins.  So he established that he had a subjective expectation of privacy.  The question is whether such an expectation of privacy, based upon an alias not routinely used by a person and when used for criminal purposes, is an interest society is prepared to recognize as reasonable and thus entitled to protection of the Fourth Amendment.

This Court finds O'Scannlain's concurring opinion in Lozano persuasive.  Judge O'Scannlain stated that he would have held that a defendant does not have a legitimate expectation of privacy in a package not addressed to him, even if it listed his address and even if the addressee was his criminal alias.  623 F.3d at 1064 (O'Scannlain, J., concurring).  In this case, Coverson may have had a subjective expectation of privacy in the package, but it is not one that society is prepared to recognize as reasonable.  The alias Jay Jenkins was not an alias adopted and regularly used by Coverson.  It was not an avatar name used in a lawful computer game.  It was a name used for a one-time purpose, and that purpose was to further a criminal scheme.  Furthermore, in this case, the package was a sham in that it was prepared and sent by the federal agents.  It was not mailed.  The agents were the senders and already knew what was

8

inside. Based on these specific facts, this Court concludes that Coverson did not have a privacy interest in the package sufficient to allow him to bring a Fourth Amendment challenge to the beeper warrant involved in the delivery of that package.

**B. Privacy interest in the Vance Drive address**

This Court concludes, however, that this motion is not simply resolved by determining Coverson lacked a sufficient privacy interest in the package, because the intrusion at issue included more than just the package. The warrant at issue was not a search warrant for the package and there was no contested search of the contents of a package. Indeed, the agents knew what was inside the package because they created it in the first place. Instead, the warrant was a beeper warrant that allowed the agents to track the package, determine when it had been opened, and then go search for and retrieve the package wherever it happened to be opened, which in this case was the Vance Drive address. Because neither party had initially considered the issue, the Court requested further briefing on whether Coverson resided at the Vance Drive address where the agents entered pursuant to the beeper warrant, and, if so, whether that residency is sufficient to give him the requisite privacy interest to challenge the beeper warrant.

Both sides presented briefing as requested. Coverson submitted his brief at Docket 186. Coverson cites to the testimony he provided during the evidentiary hearing and concludes that the testimony alone is sufficient to convey standing to challenge the beeper warrant. The Government submitted its brief at Docket 194. It argues that Coverson failed to establish the requisite privacy interest in the Vance Drive address based on his terse testimony. It also argues that this Court should not credit Coverson's testimony because in the presentence report, prepared in this case before he withdrew his guilty plea, Coverson directly contradicts his

9

testimony from the evidentiary hearing by telling the probation officer that he was not a resident of Alaska and that he only visited Alaska and by giving an address in Renton, Washington as his residence.

As stated above, it is Coverson's burden to demonstrate the requisite expectation of privacy in the place or area searched. United States v. Zermeno, 66 F.3d 1058, 1061 (9th Cir. 1995). In the evidentiary hearing Coverson testified that on July 13, 2009 he was residing in Anchorage, Alaska. He was asked what his exact residence was on that date. Coverson replied that he lived on Vance Drive. Counsel then asked Coverson whether his address was 4318 Vance Drive and Coverson responded, "Yes, I believe so." (Tr. at 20). He then confirmed that he lived in Apartment 4A at that address. He testified that he also had a residence in Seattle. He testified that Paul Nagan also lived at the Vance Drive residence and that he had a key and a room there. (Tr. at 21). During his testimony, he did not provide any details about whether he stayed overnight at the residence or how long he would stay there at one time. He did not testify as to whether he had a lease for the apartment or even a key. He did not state that he kept belongings at the apartment. Although in a subsequent filing at Docket 207, Coverson asserts that the return on the search warrant for the Vance Drive address demonstrates that the residence was more than a stash house and that belongings were kept at the residence.

The Government cites to three sentences of the sealed presentence report filed in this case at Docket 38 in order to demonstrate that Coverson's testimony should not be credited. The presentence report was prepared after Coverson changed his plea, a plea which he later withdrew.

Coverson had an opportunity to review the presentence report with his counsel, and he could have clarified any of the statements in the presentence report that were not accurate. His

objections to the report were filed at Docket 42 and did not mention any revisions related to his residency. At a change of plea hearing on October 19, 2009, District Court Judge Timothy Burgess informed Coverson that the presentence report would be prepared and that someone from the Probation Office would interview him in the presence of counsel in order to prepare that report. He was informed that he did not have to answer the probation officer's questions but that any statements he did make had to be truthful and that there could be consequences if he was not truthful. Judge Burgess informed Coverson that he would receive a draft and that he should work with his attorney to make sure everything in that report is accurate.

      Coverson argues that any statements he made to the Probation Office for the presentence report cannot be used against him at this time pursuant to Rule 410 of the Federal Rules of Evidence. Rule 410 states that evidence of the following is not admissible against the defendant in any civil or criminal proceeding: 1) the fact that the defendant entered a guilty plea that was later withdrawn; 2) the fact that the defendant entered a plea of nolo contendere; 3) any statement made in the course of any change of plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure; or 4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty later withdrawn. Fed. R. Evid. 410. The rule sets forth some exceptions, which are not applicable in this case. The Court is not asked to consider his guilty plea as a reason why Coverson's testimony about his residence is not credible. The evidence the Government asks this Court to consider are statements made by Coverson to the Probation Office. Thus, the Court must consider whether these statements were made during a Rule 11 plea hearing or as part of plea discussions with an attorney for the prosecuting authority.

11

After due consideration of Coverson's argument, the Court concludes that Rule 410 does not bar this Court's consideration of the three sentences in the presentence report related to residency. Rule 410 does not apply to the statements Coverson made to the *probation officer*. He did not make these statements at a change of plea hearing or during the District Court's discussion of the plea agreement on October 19, 2009. Also, he did not make these statements to the prosecuting attorney. The probation officer acts on behalf of the court and not on behalf of the prosecutorial arm of the government. United States v. Belgard, 894 F.2d 1092, 1096-97 (9th Cir. 1990). Indeed, another court has concluded that statements made to a probation officer in preparation for a presentence report are admissible under Rule 410. See United States v. Perez-Franco, 873 F.2d 455, 460-61 (1st Cir. 1989).

Coverson also argues that under Rule 32(e)(1) of the Federal Rules of Criminal Procedure the Probation Office cannot submit the presentence report to the court until the defendant has pleaded guilty. He argues that he withdrew his plea and thus has never formally pleaded guilty and so the presentence report should not be on the record. In other words, he argues that because his plea was withdrawn, the report should be withdrawn as well. But Coverson provides no support for that interpretation. Coverson changed his plea to guilty on October 19, 2009. The presentence report was then prepared and submitted on record under seal to the court. There has been no violation of Rule 32(e)(1).

The Court concludes that Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 32(e) cannot shield Coverson from the consequences of making contradictory statements to officers of the court for purposes of this Fourth Amendment "standing" issue. Based on Rule 32.2 of the Local Criminal Rules, such reports are declared confidential records of

12

the court. D.AK. LCrR 32.2(a)(1). These reports may not be released or disclosed to other people or entities unless the Court so orders to serve the interests of justice. D.Ak. LCrR 32.2(a)(2). By describing the three sentences in this report and recommendation, this Court will be disclosing a portion, albeit a very minuscule portion, of the presentence report. In this case, the Court concludes that it is in the interests of justice to discuss the two sentences located at paragraph 69 on page 22 of the pretrial sentence report and one sentence located at paragraph 75 on page 22 of the pretrial sentence report. This report reveals that Coverson's statements to the probation officer—an officer of the court—were contrary to Coverson's statements provided to this Court during the evidentiary hearing. The Court cannot condone deception on the Court for the sake of privacy, especially when the two sentences at issue do not disclose sensitive personal information related to Coverson, and when Coverson had an opportunity to correct any statements made in error. It is important to note that this Court is not using his statements in the presentence report to impeach Coverson as to his guilt or innocence for the underlying crime. Instead, it looks at these statements in the context of a pretrial evidentiary hearing and for the purpose of determining whether Coverson's testimony regarding his residence was credible.

This Court therefore discloses the following sentences on page 22 of the presentence report:

> 69. According to the defendant, he is not a resident of Alaska, and has always lived in Washington in the Seattle area. Coverson stated he has only "visited" Alaska. . . .
> 75. The defendant reported his last residence as being with his mother, [name redacted], at [specific address redacted], Renton, Washington, since May 16, 2008.

(Doc. 38-3 at 22).

These statements call into question Coverson's testimony during the evidentiary hearing.

At that hearing, he stated that he lived in Anchorage. He could not recite the exact address. Instead, he only confirmed the address after his counsel recited it. He testified in Court that he maintained two residences—one in Alaska and one in Washington. But that statement does not mesh with what he told the probation officer. If Coverson were to have testified consistently with his statements to the probation officer, he would have testified that he was visiting Alaska but was an overnight guest at the Vance Drive address. He did not do so, thus calling into question the true facts related to his residency and his relationship with the Vance Drive address.

Based on the foregoing, this Court concludes that Coverson's testimony that he resided at 4318 Vance Drive, Apt. #A4 was not credible and that he did not sufficiently establish a privacy interest in the Vance Drive address in order to challenge the beeper warrant.

## IV. CONCLUSION

Based on the foregoing analysis, this Court respectfully recommends that Defendant's Motion to Suppress Evidence at Docket 130 be DENIED.

DATED this 22nd day of March, 2011, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **CLOSE OF BUSINESS, March 23, 2011 at 4:00 p.m.** Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-89 (9th Cir. 1980), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to

the objections shall be filed on or before **CLOSE OF BUSINESS, March 24, 2011 at 4:00 p.m.** The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a). **The shortened objection and response deadlines are necessary due to the looming trial date and the necessity to issue summons to potential jury members. D.AK. L.M.R. 6(a) authorizes the court to alter the standard objection deadlines.**